We are now going to move to Case No. 5, O' Boyle v. Real Time Resolutions, Case No. 18-1936. And we'll begin with Mr. Fruchter. Thank you, Your Honors. Good morning. May it please the Court. My name is Jesse Fruchter. I represent the plaintiff, Ms. Anne O' Boyle, in this case. The case was brought under the Fair Debt Collection Practices Act, and the FDCPA requires that the debt collector apprise the debtor with a certain notice of her statutory rights called the Validation Notice, colloquially. Since Congress passed the Act almost 40 years ago, or actually over 40 years ago now, debt collectors have been trying to hide, contradict, overshadow the Validation Notice, all to prevent consumers from seeking verification of their debts. Back in 1997, this Court held in Bartlett v. Heibel that the Validation Notice must be clearly communicated and cannot be obscured, for example, by contradictory information, misleading information about how the consumer would go about disputing the debt, anything like that. One of the ways that is often considered is inconspicuous placement of the Validation Notice. And along those lines, is the collection letter going to a second page? Is it your argument that that's an attempt to deceive the individual who received the letter? So, there's... The question is, is it capable of a yes or no answer? Yeah, I guess in terms of, is it my position personally, or... Of your client. No, she's not saying that the debt collector was necessarily intentionally trying to deceive. At this point, the Act is not... Basically is agnostic as to whether there's intent. It's a strict liability statute. Let me rephrase my question then away from the intent. Is it the position of the appellant then that going on to the second page was a deception? Yes, our position is that it is deceptive. But it should also be noted that, in fact, this didn't go to the second page. This letter goes to a third page. And I stand corrected. Front of the first page, back of the first page, then front of the second page. That's right, Your Honor. So, my question would go to that front of the second page, the third page of text. Is it your client's position that that was deceptive? Yes, particularly in light of an instruction on that first page that the consumer should see the back of the page. So that, in your client's position, would be a misdirection away from the key language at the top of the third page of text, second physical piece of paper. That's right. Particularly in light of the fact that there is a whole slew of state-related disclosures on the back of that second page. In the plaintiff's case, as a Johnson resident, one of those disclosures was, in fact, relevant to her and would be construed as that important information. The briefing in the case cites a whole slew of cases that are similar, that consider this sort of inconspicuous placement of a validation notice. Those cases go all the way back to 1980, basically, when the courts were still trying to figure out how this notice must be provided. Virtually all of these cases fall into one of two types. In the first type of case, the Dunning letter's first page includes a warning that directs the consumer to the notice. This happened before this court in Sims and Zemeckis cases. There's no overshadowing there because the letter, the first page, tells you where to find the validation notice. But in the second type of case, the letter's first page does not direct the consumer, whether that's because there's a misdirection, as there was in this case, whether it's because there was just no notice to see the reverse side, as in the Ost case, as in the Papetti case, there was also a misdirection. So this has come before courts before, and almost universally the courts hold that there's an overshadowing or a misdirection. Basically, the consumer is not being apprised of their statutory rights. Other than the location, is there anything wrong with the validation notice? The language in the validation notice itself. Yeah. The language that they use is... That's been raised. I mean, I don't mean first time. I mean, has that been part of your claim? It's not... Oh, no. No, Your Honor. The language is statutory language that they use. It is potentially conflicted by a statement on the front of the letter, which includes the debt collector's telephone number. If you read the validation notice closely, you see that in order to dispute a debt effectively and require the debt collector to provide verification of the debt, you must do so in writing. And so a consumer who didn't see the validation notice or didn't pay the attention due important information, like she would, the important information that's expressly called to her attention on the reverse side of the letter, might pick up the phone and call the debt collector and wouldn't be garnering the protection under the Act. You're into your rebuttal time. Would you like to reserve it or would you like to continue? Yeah. I'll reserve. Okay. Thank you. Thank you, Your Honor. All right. We'll next hear from Mr. Haynes. Good morning. May it please the Court. My name is David Hannes, and I represent the Defendant Appellee Real-Time Resolutions. I think it's important to remember that the real-time letter at issue was a short two-page letter that was consecutively paginated and where the required validation notice is clearly inconspicuously printed on the front side of the second page of that letter. The consecutive pagination is important because it alerts the consumer that the letter consists of two pages and page number two necessarily follows. And I think as a matter of law, even the unsophisticated consumer should be expected to read the second page and not simply ignore it because the first page indicates that there's information on the back side of the first page. And I think the obvious reason that a consumer should be alerted when there's information printed on the back side of a page is because many, if not most, written communications are one-sided, and we don't want a statutorily required notice to be buried where it may not be seen by the consumer. And that's why in cases like Zemeckis and Sims where the validation notice is printed on the back side, it's important to alert the consumer to that fact. But that is not the case here. Here the validation notice, again, is clearly and conspicuously printed in the first paragraph front side of the second page of this letter where any reasonable consumer, even an unsophisticated consumer, who took the time to read both pages would see the validation notice. And this clearly isn't a case where the debt collector made a demand for payment and buried the notice hoping that the consumer would make payment without learning of her validation rights. The G notice was there for the consumer to read on the second page. The fact that the first page of the letter refers to important information on the back side should never relieve the consumer of her common sense obligation to read both pages. Nor does the letter suggest or imply that page two is somehow unimportant because the first page refers to important information on the back side. And so, in effect, the plaintiffs are asking the court to hold here is that an unsophisticated consumer can be excused from reading the second page of a two-page letter merely because the first page alerts the consumer that there's information on the reverse side of it. And that result would be entirely at odds with the unsophisticated consumer standard as it's been articulated by this court. One of the things that the unsophisticated consumer standard presumes is that the consumer will read collection letters with added care. That necessarily presumes that the consumer is going to read both pages of a two-page letter that is clearly paginated as such. Let me move you to the amendment issue. Yes. I think it could be fair to characterize our case law as usually allowing for amendment. That didn't happen here. What's your position on that? I think Your Honor is generally correct that the case law favors an opportunity to amend in the face of a 12b6 motion such as this. However, it was the timing of the request for leave to amend that I think led the district court to deny it. Normally when we see a request for leave to amend or motion for leave to amend, it is in response to the 12b6 motion. In this case, the plaintiff selected to fully brief the motion and allow the court to decide the 12b6 motion. Only when they lost did the plaintiffs file a motion for reconsideration and then seek leave to amend the complaint. I think Judge Adelman was well within his discretion to conclude that there was undue delay on the plaintiff's part in seeking leave to amend, that it was somewhat prejudicial to my client having to file a reply brief and incur the time and expense involved in that process, and that it was burdensome to the court to have to author a written decision on the 12b6 motion only to be asked to receive an amended pleading and have that process begin all over again. And so I think for those reasons, Judge Adelman was certainly within his discretion to deny that request to amend. So unless there are any further questions, we would ask the court to affirm the decision of the district court. Thank you. Thank you. Mr. Proctor-Ravon. So as to the leave to amend issue, this court has made very clear repeatedly in Berry Aviation, in Runyon, that the fact that a district court needs to author an opinion and the defendant needs to author briefs, that's not sufficiently prejudicial for denial of leave to amend under the liberal amendment of pleading standards. Plaintiff does not forego her right to amend. What about this point that your opponent offers, that there were no new facts in the proposed amended complaint? That's simply not true. The proposed amendment included facts based on the letter itself and the underlying account information that demonstrate that the account information that the letter provided is, in fact, wrong and would be further confusing. You mean he doesn't know the money or something like that? No. It's the way it's based on the account breakdown. But, yeah, there's incorrect account information. As to whether an unsophisticated consumer reads an entire letter, that simply is not the case. That's not the standard. If the consumer is presumed to read the letter, there's no reason to include a notice to see the reverse side, which was obviously very important to the court in Zemeckis. The pipette letter is virtually identical to the letter in this case. The only difference is the back of the pipette letter was blank. This letter included those state disclosures. If anything, the consumer is more likely to notice and assume that the information on the second sheet in the pipette letter is that important information. And, again, Mr. Hannes, with all due respect, the fact is this letter has three pages. Anybody reading this letter sees three pages. They can paginate it however they want. It's a three-page letter. Thank you, Mr. Fruchter. Thank you. Thank you. Thank you, Mr. Hannes. The case will be taken under revisement.